**NATIONAL ORGANIZATION OF VETERANS' ADVOCATES, INC., Petitioner,**

and

**Paralyzed Veterans of America, Petitioner,**

v.

**SECRETARY OF VETERANS AFFAIRS, Respondent.**

**Nos. 02–7357, 02–7390.**

United States Court of Appeals, Federal Circuit.

Jan. 10, 2003.

Kenneth M. Carpenter, Carpenter, Chartered, of Topeka, KS, for petitioner National Organization of Veterans' Advocates, Inc.

Michael P. Horan, Paralyzed Veterans of America, of Washington, DC, argued for petitioners. With him on the brief was Lawrence B. Hagel, General Counsel.

Russell A. Shultis, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; and Deborah A. Bynum, Associate Director. Of counsel on the brief was Donald E. Zeglin, Deputy Assistant General Counsel.

Before CLEVENGER, SCHALL, and DYK, Circuit Judges.

DYK, Circuit Judge.

National Organization of Veterans' Advocates, Inc., ("NOVA") and Paralyzed Veterans of America ("PVA") (collectively, "petitioners"), challenge the validity of 38 C.F.R. § 20.1106, which was revised by the Department of Veterans Affairs ("the Department") in response to this court's decision in *National Organization of Veterans' Advocates, Inc. v. Secretary of Veterans Affairs*, 260 F.3d 1365 (Fed.Cir.2001) (hereinafter *"NOVA I "*). In *NOVA I* we found that the January 2000 revision of 38 C.F.R. § 3.22 was arbitrary and capricious because it was inconsistent with 38 C.F.R. § 20.1106. *Id.* at 1379. We, therefore, remanded to the Department with instructions to perform a rulemaking consistent with one of three enumerated options. *Id.* at 1379–81. We conclude that the Department, in the remand proceeding, failed to revise the two regulations to make them consistent with each other or to explain why reopenings for new and material evidence are excluded. We therefore again remand this case to the Department for further proceedings. We also continue to stay the processing of certain applications that would otherwise be denied under the standards currently being applied by the Department.

## BACKGROUND

In *NOVA I* we reviewed in detail the statutory and regulatory scheme governing the award of dependency and indemnity compensation ("DIC benefits") to surviving spouses of deceased veterans. Briefly, that scheme is as follows. One statute (38 U.S.C. § 1311(a)(1)) has for many years provided for basic DIC benefits to survivors of veterans who died as the result of a service-connected disability. These basic benefits do not depend on whether the veteran received or was entitled to receive disability benefits during his lifetime. Two other provisions, however, provide for DIC payments or increased DIC payments that require a showing that the veteran met a requirement of being "in receipt of or ... entitled to receive ... compensation" for a service-connected disability that was "rated totally disabling" for a prescribed period before death. 38 U.S.C. §§ 1311(a)(2), 1318 (2000). One of these (38 U.S.C. § 1311(a)(2)) [1] provides for increased DIC benefits to the survivors of a veteran whose death was "service-connected" where the veteran's "disability was rated totally disabling for a continuous period of at least eight years immediately preceding death." The other (38 U.S.C. § 1318) [2] provides for DIC benefits to be paid to survivors of veterans whose death was not service connected "as if the veteran's death were service related" when spe-

---

**1.** Section 1311(a)(2) provides for the payment of increased death benefits to a veteran's surviving spouse "in the case of the death of a veteran [from a service-connected or compensable disability] who at the time of death was in receipt of *or was entitled to receive ...  compensation* for a service-connected disability that was rated totally disabling for a contin-

uous period of at least eight years immediately preceding death." 38 U.S.C. § 1311(a)(2) (2000) (emphasis added).

**2.** Section 1318 provides for the payment of regular death benefits to a veteran's surviving spouse:

cific disability durational requirements are met. 38 U.S.C. § 1318(a) (2000).

Two issues have arisen concerning interpretation of the "entitled to receive" language of the statutes; first, whether, after the veteran's death, the survivors can file a new claim for the specified DIC benefits even though the veteran did not file a total disability claim during his lifetime or such a claim was filed but denied and, second, even if such new claims are barred, whether total disability claims filed (but denied) during the veteran's lifetime can be reopened after death in the context of a claim for DIC benefits.

Despite the virtual identity in the "entitled to receive" statutory language, the

> as if the veteran's death were service connected ... [where the veteran] was in receipt of *or entitled to receive ... compensation at the time of death for a service-connected disability* rated totally disabling if—
> (1) the disability was continuously rated totally disabling for a period of 10 or more years immediately preceding death; [or]
> (2) the disability was continuously rated totally disabling for a period of not less than five years from the date of such veteran's discharge or other release from active duty[.] 38 U.S.C. § 1318 (2000) (emphases added).

**3.** Section 3.5(e) provided: *"Surviving spouses' rate.* (1) When death occurred on or after January 1, 1993, the monthly rate of dependency and indemnity compensation for a surviving spouse shall be the amount set forth in 38 U.S.C. 1311(a)(1). This rate shall be increased by the amount set forth in 38 U.S.C. 1311(a)(2) in the case of the death of a veteran who at the time of death was in receipt of or was entitled to receive (or but for the receipt of retired pay or retirement pay was entitled to receive) compensation for a service-connected disability that was evaluated as totally disabling for a continuous period of at least eight years immediately preceding death." 38 C.F.R. § 3.5(e) (2000).

**4.** Section 20.1106, which defines procedure to be followed by the Board of Veteran's Appeals, provided that *"[e]xcept with respect to benefits under the provisions of 38 U.S.C.*

regulations in effect at the time of *NOVA I* interpreted the two statutes differently. In the case of § 1311(a)(2) benefits, one regulation (38 C.F.R. § 3.5(e))[3] simply reiterated the statutory language, and another (38 C.F.R. § 20.1106)[4] implied, as we held in *Hix v. Gober,* 225 F.3d 1377 (Fed. Cir.2000), that "the 'entitled to receive' provision of § 1311(a)(2) requires *de novo* determination of the veteran's disability, upon the entirety of the record including any new evidence presented by the surviving spouse." *Id.* at 1380–81 (permitting the adjudication of DIC claims by the Board on a hypothetical basis). In the case of § 1318 benefits, one regulation (38 C.F.R. § 3.22)[5] spelled out the Depart-

*1318* and certain cases involving individuals whose Department of Veterans Affairs benefits have been forfeited for treason or for subversive activities under the provisions of 38 U.S.C. 6104 and 6105, *issues involved in a survivor's claim for death benefits will be decided without regard to any prior disposition of those issues during the veteran's lifetime."* 38 C.F.R. § 20.1106 (2000) (emphases added).

**5.** Section 3.22 limited the circumstances under which a veteran's survivor may claim entitlement to DIC benefits by defining the "entitled to receive" language as follows:

> "entitled to receive" means that at the time of death, the veteran had service-connected disability rated totally disabling by VA but was not receiving compensation because:
> (1) VA was paying the compensation to the veteran's dependents;
> (2) VA was withholding the compensation under authority of 38 U.S.C. 5314 to offset an indebtedness of the veteran;
> (3) *The veteran had applied for compensation but had not received total disability compensation due solely to clear and unmistakable error in a VA decision concerning the issue of service connection, disability evaluation, or effective date;*
> (4) The veteran had not waived retired or retirement pay in order to receive compensation;
> (5) VA was withholding payments under the provisions of 10 U.S.C. 1174(h)(2);

ment's interpretation of the statute in detail (allowing the reopening only for clear and unmistakable error (CUE) claims) and the other (again § 20.1106) specifically provided that Board determinations thereunder would *not* be performed "without regard to any prior disposition of those issues during the veteran's lifetime." 38 C.F.R. § 20.1106 (2000).[6]

Thus, as we noted in *NOVA I*, the § 1311(a)(2) regulations allowed the filing of new claims without regard to claim filing or claim dispositions during the veteran's lifetime, while the § 1318 regulations did not allow the filing of new claims, and allowed the reopening of claims only for CUE. *NOVA I* involved an appeal from the rulemaking proceeding adopting the new version of the § 1318 regulations (38 C.F.R. § 3.22).

In *NOVA I* we held that because the §§ 1311(a)(2) and 1318 regulations interpreted virtually identical statutory language inconsistently, those regulations could not stand. We remanded the proceeding to the Department with a mandate to perform an expedited rulemaking in which the Department was to do one of:

(1) [ ] provide a reasonable explanation for its decision to interpret sections 1311 and 1318 in inconsistent ways; or (2)[ ] revise 38 C.F.R. § 3.22 to harmonize that regulation with this court's interpretation of 38 C.F.R. § 20.1106 in *Hix v. Gober*, 225 F.3d 1377 (Fed.Cir.2000); or (3)[ ] revise 38 C.F.R. § 20.1106 to be

consistent with the revised version of 38 C.F.R. § 3.22.

*NOVA I*, 260 F.3d at 1380–81. Thus, the purpose of the remand was to render consistent the implementing regulations for 38 U.S.C. §§ 1311(a)(2) and 1318, or to provide a reasonable explanation for the lack of consistency.

Upon remand the Department determined that the two statutes should be interpreted in the same way. 67 Fed.Reg. at 16,309 (Apr. 5, 2002). The Department also concluded that the § 1318 regulations (38 C.F.R. § 3.22) provided the correct interpretation of the statute. One might have then expected the Department to amend the § 1311(a)(2) regulations to contain the seven exceptions specifically listed in the § 1318 regulations (38 C.F.R. § 3.22) and also to amend 38 C.F.R. § 20.1106 to include references to both statutes. That did not occur. The Department did not amend its regulations implementing § 1311(a)(2) to make them consistent with 38 C.F.R. § 3.22, the regulation implementing § 1318. The Department instead only amended 38 C.F.R. § 20.1106 as follows:

Except with respect to benefits under the provisions of 38 U.S.C. *1311(a)(2)* [and] 1318 ... issues involved in a survivor's claim for death benefits will be decided without regard to any prior disposition of those issues during the veteran's lifetime.

---

(6) VA was withholding payments because the veteran's whereabouts was unknown, but the veteran was otherwise entitled to continued payments based on a total service-connected disability rating; or

(7) VA was withholding payments under 38 U.S.C. 5308 but determines that benefits were payable under 38 U.S.C. 5309.

38 C.F.R. § 3.22(b) (2000) (emphasis added).

**6.** The prior version of § 3.22 had stated that DIC benefits would be provided when a veter-

an "was in receipt of *or for any reason ... was not in receipt of but would have been entitled to receive* compensation at the time of death." 38 C.F.R. § 3.22(a)(2) (1999) (emphases added). The regulation at issue in *NOVA I* replaced this broad permissive statement with seven enumerated exceptions, including providing for the reopening of claims only on grounds of CUE. 38 C.F.R. § 3.22 (2002).

67 Fed.Reg. at 16,317 (emphasis added to indicate revision in text). Thus, the Department simply rewrote the regulations to require that claims under § 1311(a)(2) *not* be performed without regard to prior determinations, without revising the § 1311(a)(2) regulations to spell out the exceptions provided under the § 1318 regulations.

NOVA and PVA timely petitioned for review of this final rule.

## DISCUSSION

We have jurisdiction to review the validity of the rulemaking process and the regulation challenged here pursuant to 38 U.S.C. § 502. *See Disabled Am. Veterans v. Gober,* 234 F.3d 682, 688 (Fed.Cir.2000), *cert. denied,* 532 U.S. 973, 121 S.Ct. 1605, 149 L.Ed.2d 471 (2001). The review is conducted in accordance with the standard of review in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.

## I

The petitioners on appeal again argue that the contested statutes are clear and unambiguous, and that the regulations are inconsistent with the statutes. However, this court determined in *NOVA I,* 260 F.3d at 1377, that the statutory language was ambiguous. That determination corresponded to the first step in the two-step procedure established by the Supreme Court in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See Haggar Apparel Co. v. United States,* 222 F.3d 1337, 1340 (Fed.Cir.2000) ("First, always, is the question whether Congress has directly spoken to the precise question at issue."). Because we have already determined in *NOVA I,* 260 F.3d at 1379, that the statutory language does not resolve the question at issue, the petitioners' attempts to relitigate the issue of statutory construction under the first step of *Chevron* are impermissible. Similarly,

the Department argues that it has not, in fact, changed its interpretation of § 1311(a)(2), and that we misconstrued its regulations in *Hix.* 67 Fed.Reg. at 16, 315–16. This avenue of argument is likewise foreclosed.

## II

■ The remaining issue here is whether the Department committed error in the remand proceeding. The court "must decide (1) whether the statute unambiguously forbids the Agency's interpretation, and, if not, (2) whether the interpretation for other reasons, exceeds the bounds of the permissible." *Barnhart v. Walton,* 535 U.S. 212, 122 S.Ct. 1265, 1269, 152 L.Ed.2d 330 (2002) (citations omitted). We think that four separate questions are encompassed within this issue.

■ First, there is the question whether the Department could properly construe the "entitled to receive" language of §§ 1311(a)(2) and 1318 in the same way. We hold that it could do so, and the Department has adequately explained its decision to construe the two provisions identically. *See* 37 Fed.Reg. at 16,310 (interpreting "the legislative history of section 1311(a)(2) [as] mak[ing] clear that it was modeled on section 1318(b) and intended to have the same meaning").

■ Second, there is the question whether the Department could properly construe the language of the two sections to bar the filing of new claims, that is, claims where no claim had been filed during the veteran's lifetime or the claim had been denied and was not subject to reopening. We hold that it could, and that the Department has adequately explained that decision, although its decision is not a model of clarity.

To the extent that the Department has simply reexamined the statutory language and legislative history and found clarity

where we found ambiguity, it has not performed its assigned task under the second step of *Chevron. Transitional Hosp. Corp. of La., Inc. v. Shalala,* 222 F.3d 1019, 1029 (D.C.Cir.2000) (refusing to proceed to the second step of *Chevron* because "[w]hile the Secretary ha[d] discretion . . ., that discretion must [have been] exercised through the eyes of one who realizes she possesses it").[7] However, the Department has done so in other respects. The Department found that the purpose of providing DIC benefits under § 1318 was to ensure *continued support* to a veteran's survivor. Specifically, the Department stated:

> Congress's stated purpose for providing DIC in cases of certain non-service-connected deaths was to ensure a level of income to survivors in circumstances *where totally-disabled veterans and their families had depended on VA disability compensation for support during the veteran's lifetime.* Prior to 1978, DIC was payable only for service-connected deaths. In 1978, Congress enacted Public Law 95–479 to permit DIC in cases where the death was not service connected but the veteran, at the time of death, was in receipt of compensation for a service-connected disability that was rated totally disabling for a continuous period of ten or more years immediately preceding death.

\* \* \*

In contrast, the interpretation suggested by the commenter [permitting new claims] *would significantly undermine*

*the statute's purpose* by extending benefits to survivors of veterans *who had never even applied for VA disability compensation* . . . .

67 Fed.Reg. at 16, 312–313 (emphasis added); *see also* S.Rep. No. 95–1054, at 28 (1978). Thus, the Department interpreted the purpose of § 1318 as providing continued support, a purpose that it reasoned would not be furthered by permitting new claims. The Department also analyzed potential difficulties in administering new claims:

> [T]he alternative suggested by the commenter—i.e., requiring VA to make a de novo determination after a veteran's death as to whether the veteran hypothetically could have received a total disability rating for ten or more years prior to death—would entail potentially difficult burdens in developing evidence concerning the nature and extent of a now-deceased veteran's disability over past periods. . . . There would likely be significant difficulty and uncertainty concerning the assignment of retroactive effective dates for such ratings in the absence of any applicable statutory or regulatory standard. It is reasonable to infer that Congress did not intend to adopt this burdensome and ill-defined standard, particularly since it would go well beyond Congress's stated purpose of providing for DIC in cases where the veteran would have met the statutory criteria but for a CUE committed by VA.

67 Fed.Reg. at 16,314. Thus, the Department provided a permissible basis and

---

7. It is, of course, impermissible for the Department to adopt regulations in this area on the ground that particular regulations are required under the unambiguous language of the statutes. *Arizona v. Thompson,* 281 F.3d 248, 254 (D.C.Cir.2002) ("In *Chevron* terms, then, the agency itself has stopped at step one . . . [d]eference to an agency's statutory interpretation [however,] 'is only appropriate

when the agency has exercised its *own* judgment,' not when it believes that interpretation is compelled by Congress.") Instead of divining clear meaning from the ambiguous language of the statutes in accordance with the second step of *Chevron,* the agency must act within its discretion to promulgate a regulation "based on a permissible construction of the statute." *Haggar,* 222 F.3d at 1340.

sufficient explanation for its interpretation of the statutes as excluding new claims filed posthumously by a veteran's survivor, that is, claims where no claim had been filed during the veteran's life or the claim had been denied and was not subject to reopening. While these concerns led the Department to interpret the statutes to bar the filing of such new claims, the Department apparently concluded that these policies did not require barring DIC benefit claims designed to effectively reopen claims filed and denied during the veteran's lifetime. Indeed, without such an exception the "was entitled to receive" language of the statutes would have no purpose.

Under the second step of *Chevron*, "our inquiry is confined to the question of whether the agency's interpretation of the statute is 'inconsistent with [the] statutory mandate or ... frustrate[s] the congressional policy underlying a statute.'" *Haggar*, 222 F.3d at 1340 (quoting *Bureau of Alcohol, Tobacco & Firearms v. Fed. Labor Relations Auth.*, 464 U.S. 89, 97, 104 S.Ct. 439, 78 L.Ed.2d 195 (1983)). Under this deferential standard, "[t]he subsequent judicial inquiry under *Chevron* in this case is whether the agency has selected a reasonable interpretation of the statutory phrase." *Id.* at 1342 (citations omitted). We find that the Department's interpretation was reasonable, and therefore, we defer to the Department's interpretation barring posthumous filings of new claims for DIC benefits.

■ Third, there is the question whether the Department could properly construe the language of the two sections to foreclose the reopening of all total disability claims filed during the veteran's lifetime except to CUE situations. We hold that the Department's interpretation has not been adequately explained. The Department's interpretation of the statutes as

permitting disability durational requirements to be met by the reopening of a claim under CUE is reasonably supported by the statutory language and legislative history. *See* 67 Fed.Reg. at 16,312 (The Department cited the legislative history being intended "to provide that the requirement that the veteran have been in receipt of compensation for a service-connected disability ... is met if the veteran would have been in receipt of such compensation for such period but for a clear and unmistakable error regarding the award of a total disability rating."). However, the Department has not addressed why other grounds for reopening closed proceedings (in addition to CUE) should not also be allowed. Although in *Cook v. Prinicipi*, No. 00–7171 slip op. at 8 (Fed. Cir. December 20, 2002) (*en banc*), we overruled *Hayre v. West*, 188 F.3d 1327 (Fed.Cir.1999), and held that "[t]he statutory scheme provides only two exceptions to the rule of finality," *Cook*, slip op. at 8, the statutory ground of new and material evidence still exists as an additional ground (that is, in addition to CUE) for reopening a prior claim for benefits, *id.* Indeed, the Department has itself expressly relied upon the new and material evidence statute for the contested amendment to § 20.1106. *See* 67 Fed.Reg. at 16,317. Specifically, in its rulemaking for amending § 20.1106, the Department cited as the authority 38 U.S.C. § 7104(b), which provides: "[e]xcept as provided in section 5108 of this title [requiring the Secretary to reopen claims when *new and material evidence* is presented], when a claim is disallowed by the Board, the claim may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered." Thus, the very statute cited as authority by the Department as mandating finality in Board decisions recognizes that such decisions may be reopened on grounds of new and material evidence.

We must, accordingly, remand for further proceedings. In the course of the remand proceeding, the Department must explicitly consider the various interpretations of §§ 1311 and 1318 concerning the issue of reopening, make a rational selection among those alternatives, and explain its choice. *See, e.g., Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 48, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) ("We have frequently reiterated that an agency must cogently explain why it has exercised its discretion in a given manner."); *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962) (holding a rule invalid under the APA where "the Commission made no findings specifically directed to the choice between two vastly different remedies with vastly different consequences to the carriers and the public . . . [and failed to] articulate any rational connection between the facts found and the choice made").

■ Fourth, and finally, there is the question whether the Department complied with our mandate when it failed to reconcile the language of the § 1311(a)(2) regulations with the language of the § 1318 regulations. We hold that it did not. Under our remand order the Department could, and indeed was encouraged to, interpret the "entitled to receive" language of §§ 1311(a)(2) and 1318 in the same way. The Department elected to do so. 37 Fed. Reg. at 16, 309–10. However, on its face, the amendment to 38 C.F.R. § 20.1106 fails to comply with our mandate. The §§ 1311(a)(2) and 1318 regulations remain inconsistent. The Department has not amended either § 20.1106 or § 3.5 (the implementing regulation for 38 U.S.C. § 1311) to make them consistent with the § 1318 regulation (38 C.F.R. § 3.22); the Department has only amended § 20.1106 to add benefits under 38 U.S.C. § 1311(a)(2) to the exception. This amendment merely implies that the Board

should adjudicate claims with respect to benefits under both under §§ 1311(a)(2) and 1318 with regard to prior adjudications. The amendment does nothing to inform interested parties (1) that the failure to apply for benefits before the veteran's death forecloses new claims, or (2) the scope of the rule concerning prior adjudications. For example, § 20.1106 as amended does not address whether survivors may bring claims asserting clear and unmistakable error (CUE) by the Board in a prior determination as they can under § 3.22; and whether there are other grounds for reopening prior determinations. The Department has failed in its obligation to reconcile the regulations under the two statutory provisions. We cannot sustain the new regulation, but must instead vacate and remand for a further rulemaking proceeding so that reconciliation may be achieved.

## III

One final matter must be addressed, and that is the question of a continuing stay. In *NOVA I* we "direct[ed] the Department of Veterans Affairs to stay all proceedings involving claims for DIC benefits under section 1318, whose outcome is dependent on the regulation in question." 260 F.3d at 1380. At oral argument we were advised that the Department continues to process claims under § 1318 (and we assume under § 1311(a)(2)) that would not be barred under the Department's interpretation of the statutes as permitted under *NOVA I*. Such processing may and should continue. The Department should also continue to process claims for survivor benefits that would be rejected because they are based on the filing of new claims after the veteran's death, since we have found that the Department's interpretation of the statute as barring such claims to be permissible and reasonable, and assume that that view will be reflected in a new regulation under § 1311(a)(2). However,

we stay the further processing of claims under §§ 1311(a)(2) and 1318 where the survivor seeks to reopen a claim on grounds of new and material evidence, since the permissibility and reasonableness of interpreting the statutes to bar such claims remains to be determined.

## CONCLUSION

For the foregoing reasons, this matter is remanded for further rulemaking proceedings on an expedited basis.

## COSTS

No costs.

*REMANDED.*